**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

RITA WEINTRAUB; BARRY
WEINTRAUB,

        *Plaintiffs-Appellants,*

v.

QUICKEN LOANS, INCORPORATED,

        *Defendant-Appellee.*

No. 08-2373

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Senior District Judge.
(1:08-cv-00278-CMH-TCB)

Argued: October 29, 2009

Decided: February 5, 2010

Before NIEMEYER and DUNCAN, Circuit Judges,
and Benson E. LEGG, United States District Judge for the
District of Maryland, sitting by designation.

---

Affirmed by published opinion. Judge Niemeyer wrote the
opinion, in which Judge Duncan and Judge Legg joined.

---

## COUNSEL

Anthony J. Brady, Jr., Maple Shade, New Jersey; Barry Wein-
traub, Stafford, Virginia, for Appellants. Michael R. Ward,
MORRIS & MORRIS, Richmond, Virginia, for Appellee.

**OPINION**

NIEMEYER, Circuit Judge:

Prior to closing on a loan to refinance their principal residence, Rita and Barry Weintraub attempted to exercise the right to rescind given by the Truth in Lending Act, 15 U.S.C. § 1635(a), and demanded a refund of their $500 deposit. The lender, Quicken Loans, Inc., refunded the balance of the deposit after deducting the costs of a credit report and an appraisal but refused to refund the entire $500.

The Weintraubs commenced this action, seeking a declaratory judgment that Quicken Loans violated the Truth in Lending Act, injunctive relief, compensatory and statutory damages, and attorneys' fees. On Quicken Loans' motion, the district court granted it summary judgment, holding that the right to rescind given by § 1635(a) is available only to rescind a consummated credit transaction. The court concluded that because the Weintraubs elected not to go through with the loan before closing, they were not entitled to any relief under the Truth in Lending Act.

We agree and affirm.

I

On February 1, 2008, Rita and Barry Weintraub applied by telephone to Quicken Loans for a $220,000 loan, payable over 30 years at a fixed rate of interest, to refinance their principal residence, a townhouse in Stafford County, Virginia. On the same day, Quicken Loans electronically transmitted to the Weintraubs two documents: (1) A "Good Faith Estimate," based on an estimated interest rate of 5.75% and the Weintraubs' estimated house value of $340,000; and (2) an "Interest Rate Disclosure-(Not Locked) and Deposit Agreement." The Interest Rate Disclosure portion of this document provided:

> You have chosen *not* to "lock" the interest rate on the above loan program. This means that your interest rate is not guaranteed for any period of time and is subject to change without advance notice.

This document also included a Deposit Agreement requiring the Weintraubs, as part of their application, to pay Quicken Loans a $500 deposit for out-of-pocket expenses. The Deposit Agreement provided:

> If your application is approved: At the closing, Lender will credit the amount of your deposit on your closing statement toward your closing costs. If your application is denied: Lender will refund the deposit less the actual amount of out-of-pocket costs incurred on your behalf for, among other items, the cost of an appraisal and/or credit report. A conditional approval or request for additional information is not a denial. The deposit will *not* be refunded if you don't fully cooperate in or complete the application process (including submitting all required documentation in a timely manner), choose to withdraw your application, or choose not to close the transaction for any reason (including changing interest rates).

Three days later, on February 4, 2008, Barry Weintraub electronically signed the two documents. He also paid the $500 deposit by credit card.

Quicken Loans conditionally approved the loan that the Weintraubs requested. Among the conditions was Quicken Loans' receipt of a "satisfactory home appraisal."

An independent appraiser conducted an appraisal of the Weintraubs' home on February 7, 2008, and estimated its value to be $308,000. This amount was $32,000 below the $340,000 estimate that the Weintraubs had provided to

Quicken Loans for use in its Good Faith Estimate. Because this lower-than-anticipated appraisal meant that the $220,000 loan amount was greater than 70% of the townhouse's estimated value, Quicken Loans added a half-point discount fee to the closing costs for the loan. On February 18, Quicken Loans provided the Weintraubs with the closing documents, which reflected the half-point adjustment and which included a "Federal Truth-In-Lending Statement" and "Notices of Right to Cancel," and it scheduled closing for February 26. The Notices of Right to Cancel provided:

> You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:
>
>> (1) The date of the transaction, which is February 26, 2008; or
>>
>> (2) The date you received your Truth in Lending disclosures; or
>>
>> (3) The date you received this notice of your right to cancel.
>
> If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

Because Quicken Loans added the half-point discount fee to the closing costs, the Weintraubs decided not to go through

with the loan, and on February 20 they advised Quicken Loans of their decision by sending it executed Notices of Right to Cancel and a cover letter requesting a return of the $500 deposit.

Quicken Loans refused to return the full $500 deposit, referring to the Deposit Agreement, which provided that "[t]he deposit will *not* be refunded if you . . . choose to withdraw your application, or choose not to close the transaction for any reason (including changing interest rates)." Despite this contractual language, Quicken Loans refunded $129.41 to the Weintraubs, after deducting $350 for the cost of the appraisal and $20.59 for the cost of obtaining a credit report.

The Weintraubs commenced this action against Quicken Loans, alleging that Quicken Loans' failure to provide them with a full refund of their deposit within 20 days of receiving an executed notice to cancel violated § 1635(b) of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*. On Quicken Loans' motion, the district court granted it summary judgment, holding that because the Weintraubs withdrew their loan application prior to closing, the loan between the Weintraubs and Quicken Loans was never consummated and there was no "consumer credit transaction" that could give rise to the right to rescind. From the district court's judgment, the Weintraubs filed this appeal, presenting the single question of whether the Weintraubs could rescind a loan transaction before its closing and receive back their entire application deposit.

II

The right to rescind, on which the Weintraubs rely, is contained in § 1635(a) of TILA, which provides:

> *[I]n the case of any consumer credit transaction . . .* in which a security interest . . . is or will be retained or acquired in any property which is used as the prin-

> cipal dwelling of the person to whom credit is extended, *the obligor shall have the right to rescind the transaction* until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, *by notifying the creditor*, in accordance with regulations of the Board, of his intention to do so.

15 U.S.C. § 1635(a) (emphasis added). If the lender does not deliver the disclosures to the debtor, this "right of rescission" expires three years "after the date of the consummation of the transaction or upon the sale of the property, whichever occurs first." *Id.* § 1635(f). Once the right to rescind is properly exercised, the creditor must return to the debtor "any money or property given as earnest money, downpayment, or otherwise" within 20 days. *Id.* § 1635(b).

Because the right to rescind only applies "[i]n the case of any consumer credit transaction," the issue in this case is whether there can be a "consumer credit transaction" giving rise to the right to rescind before the transaction is consummated or closed.

In concluding that no "consumer credit transaction" occurred in this case to trigger TILA's right to rescind, the district court noted that even though TILA does not define the term "transaction," it does define the terms "residential mortgage transaction" and "reverse mortgage transaction," which treat "transaction" as a consummated event. Focusing on the effect of a "rescission" on the legal obligations of the parties, the court concluded that only a completed credit transaction could be eligible for rescission. *See* 15 U.S.C. § 1635(b). In addition, the court relied on our cases, which hold in the context of an automobile loan that liability for improper disclosures under § 1638 of TILA does not attach until after

consummation of a consumer credit transaction. *See Nigh v. Koons Buick Pontiac GMC, Inc.*, 319 F.3d 119, 123 (4th Cir. 2003), *rev'd on other grounds*, 543 U.S. 50 (2004); *Baxter v. Sparks Oldsmobile, Inc.*, 579 F.2d 863, 864 (4th Cir. 1978). Finally, the court referred to the applicable provision of the Federal Reserve Board's Regulation Z, 12 C.F.R. § 226.23(a)(3), as well as the Official Staff Interpretations, 12 C.F.R. Pt. 226, Supp. I, and Rescission Model Form (General), 12 C.F.R. Pt. 226, App. H-8, to conclude that all three conditions listed in § 1635(a)—(1) consummation of the transaction, (2) delivery of "Notices of Right to Cancel," and (3) delivery of TILA disclosures—had to be satisfied before any right to rescind could arise. Thus, because the Weintraubs never consummated their loan, they did not have the right to rescind it under § 1635(a).

On appeal, Quicken Loans reiterates the district court's reasoning, urging us to affirm.

The Weintraubs assert, however, that the text of § 1635(a) does not require that a loan be consummated before the right to rescind can arise. Moreover, they argue, because TILA is a remedial statute, it should be construed liberally in the consumer's favor. Quoting *Black's Law Dictionary*, they employ from the definition of "transaction" the broadest meaning to argue that it is "[a]ny activity involving two or more persons."* Accordingly, they reason that even without consummation, a "consumer credit transaction" can exist and can be "rescinded" anytime after two or more parties begin negotiations for a potential extension of credit. While they acknowledge that "transaction" includes a consummated agreement, they note that it can "just as easily refer to the process o[f]

*The full definition of "transaction" given is as follows: "1. The act or an instance of conducting business or other dealings; esp., the formation, performance, or discharge of a contract. 2. Something performed or carried out; a business agreement or exchange. 3. Any activity involving two or more persons. . . ." *Black's Law Dictionary* 1635 (9th ed. 2009).

doing some business without regard to whether a final agreement or specific result is produced." With this reasoning, they conclude that a "consumer credit transaction" occurred in this case and that therefore the right to rescind the transaction, as provided in § 1635(a), arose. Addressing the district court's reliance on the decisions in *Baxter* and *Nigh*, the Weintraubs maintain that these cases do not apply to the right to rescind created by § 1635(a) as they dealt with liability for improper disclosures under § 1638 in the context of automobile financing.

The Weintraubs argue further that interpreting § 1635(a) to require consummation of a transaction before the right to rescind can arise would lead to perverse incentives and absurd results. Specifically, they observe that requiring consummation would encourage debtors to follow through wastefully to the closing of a transaction, even though they had earlier determined to cancel, simply to be able to get their deposits back. Also, lenders, recognizing that all three conditions of a § 1635(a) rescission must be satisfied before the right to rescind can arise, would be inclined to withhold disclosures so as not to trigger this right. Indeed, they suggest, requiring that all three conditions be satisfied before the right to rescind arises would render 15 U.S.C. § 1635(f), which limits the time period within which a consumer can exercise the right to rescind to three years after consummation if the lender fails to provide disclosures, a "meaningless nullity." Because of these perverse consequences, the Weintraubs contend that the right to rescind must arise as soon as *any one* of the three conditions is satisfied. Because they received the Notices of Right to Cancel and the TILA disclosures before they attempted to exercise the right to rescind, two of the three conditions were satisfied, and they therefore had the right to rescind.

We begin by addressing the applicability of *Baxter* and *Nigh* to this case. To be sure, those decisions arose in a different context in which we were faced with the question whether liability *under § 1638* of TILA attaches prior to consumma-

tion of a consumer credit transaction for the purchase of an automobile. In *Baxter*, we began by noting that "[w]hen a retailer arranges credit for his purchaser through a third party, the transaction of sale becomes a 'credit transaction' . . . subject to the terms of the Truth in Lending Act." 579 F.2d at 864. We rejected, however, the consumer's claim for damages based on the lender's violation of the disclosure provisions of TILA because the consumer cancelled the transaction before it was consummated. Under these circumstances, there was no "credit transaction" to which TILA would apply. Accordingly, we held that although the lender "was obligated to make the proper disclosures prior to the extension of credit, . . . the Truth in Lending Act does not impose penalty until credit is in fact extended." *Id.*

In *Nigh*, we both followed and distinguished *Baxter*. The consumer there had become obligated to complete the transaction by signing the contract documents and delivering them, but because the lender encountered problems finding financing for the transaction, it never countersigned them. *Nigh*, 319 F.3d at 122. In determining whether the consumer could obtain damages for false statements made during the course of negotiations, we noted that "TILA liability . . . cannot accrue *until* a credit transaction is consummated, or put another way, 'until credit is in fact extended,' since until credit is extended to a person in a particular transaction there are no credit terms against which to assess a disclosure's accuracy." *Id.* at 123 (quoting *Baxter*, 579 F.3d at 864). But because the consumer there had become *contractually obligated* on the credit transaction, we held that *Baxter* was satisfied, even though the transaction had not been formally consummated. *Id.* at 124.

Although *Baxter* and *Nigh* both dealt with TILA liability under § 1638 for improper disclosures in connection with consumer credit transactions relating to the purchase of an automobile, we believe that the principle that a credit transaction must be consummated to trigger TILA liability applies

with equal force to the right to rescind created by § 1635(a). Rather than dealing exclusively with some aspect of TILA unique to § 1638 or to the automobile context, these cases stand for the broader principle that only when a loan has been consummated does a "credit transaction" exist that gives rise to liability under TILA. Because "credit transaction" is a term used in both § 1635 and § 1638, indeed throughout TILA, we think that *Baxter* and *Nigh* are relevant to understanding what constitutes a "transaction" that may, under § 1635(a) of TILA, be rescinded. Thus, we conclude, no "consumer credit transaction" exists for which the right to rescind can be exercised until that transaction has been consummated, "or put another way, 'until credit is in fact extended.'" *Nigh*, 319 F.3d at 123 (quoting *Baxter*, 579 F.2d at 864).

Apart from *Baxter* and *Nigh*, the language and operation of § 1635(a) supports our conclusion that the right to rescind under § 1635(a) can only arise when a transaction has been consummated. Section 1635(a) creates a right "to rescind the *transaction*." (Emphasis added). The term "transaction," while not separately defined, is included as part of two other defined terms, each of which presupposes that the "transaction" must be consummated. A "residential mortgage *transaction*," defined in § 1602, is "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest *is created or retained* against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(w) (emphasis added). Similarly, a "reverse mortgage *transaction*," also defined in § 1602, is "a nonrecourse transaction in which a mortgage, deed of trust, or equivalent consensual security interest *is created* against the consumer's principle dwelling . . . ." *Id.* § 1602(bb) (emphasis added). Both definitions treat "transaction" as a consummated event, indicating that any credit transaction under § 1635(a) must be consummated for the right to rescind to attach.

Moreover, while the Weintraubs have relied on the broad definition of "transaction" taken from *Black's Law Dictio-*

*nary*, they have failed to account for the alternative definition geared more toward business contexts. *See Black's Law Dictionary*, 1635 (9th ed. 2009) (defining "transaction" in the business context as "[s]omething performed or carried out; a business agreement or exchange"). In a business context where goods, services, or funds are to be exchanged, one would hardly conclude that he had entered into a transaction without actually performing the exchange.

Similarly, a commonsense reading of the text of § 1635(a) also suggests that "transaction" refers to a consummated, binding agreement, rather than to the whole course of the parties' interactions. The right to rescind a transaction defined as the whole course of interactions between the parties would essentially be meaningless—there would often be nothing to rescind. Surely, what Congress intended instead was to give debtors a limited right to back out of binding loan obligations about which they were having second thoughts. But until a loan is consummated, the consumer has incurred no obligation from which he would need a statutorily created right to back out. Moreover, there is nothing to indicate that Congress intended the Weintraubs' construction, which would, in effect, give potential borrowers a right to a "free application" for home financing, requiring lenders to bear the costs of credit reports and appraisals regardless of whether the borrower intended to proceed to a closing of the transaction.

Finally, our conclusion is consistent with the interpretation of TILA advanced by the Board of Governors of the Federal Reserve System in Regulation Z, 12 C.F.R. Pt. 226, which is entitled to deference. *See Household Credit Servs., Inc. v. Pfenning*, 541 U.S. 232, 238-39 (2004). In addition to reiterating the statutory right of rescission, Regulation Z provides that "[w]hen a consumer rescinds *a transaction*," the "[e]ffect[ ] of rescission" is to render void "the security interest *giving rise* to the right of rescission." 12 C.F.R. § 226.23(d) (emphasis added). The object of rescission is thus presumed to be a *transaction creating a security interest* in

the consumer's property. Likewise, the discussion in the Official Staff Interpretations of the relevant section of Regulation Z also presumes a completed transaction when stating that "[i]n order for the right of rescission to apply, the security interest *must be retained* as part of the credit transaction." 12 C.F.R. Pt. 226, Supp. I (interpreting 12 C.F.R. § 226.23(a)(1)) (emphasis added). This language further suggests that the right to rescind a transaction creating a security interest can only arise from a consummated transaction, because only upon consummation of the transaction is the security interest retained.

While the Deposit Agreement in this case, pursuant to which the Weintraubs paid Quicken Loans the $500 deposit, was undoubtedly a "transaction" entered into before consummation of the credit transaction, TILA would certainly not apply to that transaction because it did not involve an extension of credit. *See Baxter*, 579 F.2d at 864. Moreover, because the Weintraubs withdrew their application before the loan was consummated, the right to rescind given by § 1635(a) never arose, and Quicken Loans was therefore not obligated by § 1635(b) to return the full value of the deposit when the Weintraubs attempted to exercise the right.

In sum, we follow the definition of "credit transaction" established in *Baxter* and *Nigh*, and hold that a consumer cannot exercise the right to rescind created by § 1635(a) until after consummation of a consumer credit transaction. Accordingly, the judgment of the district court is affirmed.

*AFFIRMED*