Filed 11/24/14  Hetrick v. Deutsche Bank Nat. Trust Co. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| BENJAMIN HETRICK, Plaintiff and Appellant, v. DEUTSCHE BANK NATIONAL TRUST COMPANY, Defendant and Respondent. | F067675 (Super. Ct. No. 662271) **OPINION** |

APPEAL from a judgment of the Superior Court of Stanislaus County.  Roger M. Beauchesne, Judge.

Richard C. Sinclair for Plaintiff and Appellant.

Wright Finlay & Zak, Jonathan D. Fink, Bradford E. Klein and Richard J. Lee for Defendant and Respondent.

-ooOoo-

In this wrongful foreclosure case brought by plaintiffs Benjamin and Darla Hetrick against defendant Deutsche Bank National Trust Company,[1] plaintiffs alleged that defendant failed to provide a modification of their home loan pursuant to the federal mortgage assistance program known as "Home Affordable Modification Program" (HAMP)[2] and then improperly proceeded to foreclose on their home.  The trial court granted defendant's motion for summary judgment, and plaintiffs now appeal from the resulting judgment.  Plaintiffs argue that the trial court should have continued the hearing of the motion for summary judgment to allow them additional time to complete discovery and that, even apart from the issue of the continuance, the trial court erred in granting summary judgment.  Plaintiffs further argue the trial court erred when it failed to grant several motions filed by them, including motions to compel further responses to discovery requests, to reconsider prior orders, to grant relief under Code of Civil Procedure section 473 and for a new trial.[3]  On the record before us, we conclude that plaintiffs have failed to demonstrate any error or abuse of discretion.  Accordingly, we affirm the judgment of the trial court.

### FACTS AND PROCEDURAL HISTORY

On August 22, 2006, plaintiff Benjamin Hetrick obtained a mortgage loan in the amount of $530,000 (the loan) from Plaza Home Mortgage, Inc. (the lender).  The

---

[1]     Defendant was sued under the following name and capacity:  "Deutsche Bank National Trust Company as Trustee of the Residential Asset Securitization Trust 2006-A13, Mortgage Pass-Through Certificates, Series 2006-M under the Pooling and Servicing Agreement Dated October 1, 2006 .…"  (Some capitalization omitted.)

[2]     "As authorized by Congress, the United States Department of the Treasury implemented the Home Affordable Mortgage Program (HAMP) to help homeowners avoid foreclosure during the housing market crises of 2008.  'The goal of HAMP is to provide relief to borrowers who have defaulted on their mortgage payments or who are likely to default by reducing mortgage payments to sustainable levels, without discharging any of the underlying debt.'  [Citation.]"  (*West v. JPMorgan Chase Bank*, *N.A.* (2013) 214 Cal.App.4th 780, 785.)

[3]     Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

monthly payments under the terms of the loan were $4,290.71.[4] The loan was secured by a deed of trust (the deed of trust) encumbering plaintiffs' primary residence located in Turlock, California (the real property). Coplaintiff Darla Hetrick was not a borrower on the subject loan, nor was she named on the deed of trust; her sole interest in the litigation was apparently based on the fact that she shared a community property interest in the real property. Because Benjamin Hetrick was the party who entered the loan transaction, executed the deed of trust and sought a loan modification to avoid foreclosure, when we refer in this opinion to plaintiff (in the singular), we mean Benjamin Hetrick.[5]

Under the express terms of the deed of trust, Mortgage Electronic Registration Systems, Inc. (MERS) was the nominee of the lender (and of the lender's successors and assigns) and was also the beneficiary under the deed of trust. The deed of trust secured the repayment of the loan and all extensions or modifications thereof, and included plaintiff's grant of a power of sale to the trustee. In November 2009, MERS, as the lender's nominee and as beneficiary under the deed of trust, assigned all of its beneficial interest in the deed of trust, together with its rights concerning the loan or note therein described, to defendant. During the relevant time period, OneWest Bank, FSB, through its servicing division, IndyMac Mortgage Services (IndyMac), was the servicing agent on behalf of defendant.

In 2009, during the real estate downturn, plaintiff experienced difficulty meeting the loan obligation. By September 2009, he had fallen behind in his payments. On or

---

[4] The amount of the monthly payment under the loan was undisputed. Since the monthly payment was more than the amount stated on the face of the promissory note (i.e., $3,570.71), it presumably included (in addition to principal and interest) sums for other mortgage-related expenses such as property taxes and insurance.

[5] We find it unnecessary to determine whether Darla Hetrick lacked standing, since the appeal is being resolved on other grounds, as discussed herein. Even assuming she could bring suit here as a coplaintiff, her claims stand or fall with those of her husband. As noted, when we use the singular "plaintiff" herein, we are referring to Benjamin Hetrick, but we do so with the understanding that if his claims are negated, so are his wife's.

about August 11, 2009, IndyMac sent plaintiff a document entitled "Modification Agreement," which purported to "confirm" his agreement to modify the loan but cautioned that the agreement was "not binding" on the note holder or its servicing agent, IndyMac, "unless and until" it was "verifie[d] that [he] qualifie[d] for this modification offer." The same document was also described in its caption as a "Stipulated Forbearance to Loan Modification Program." Under this proposed modification/forbearance program, plaintiff was required to "promptly provide IndyMac acceptable information to permit verification of [his] income, and make the payments shown in the payment schedule … while IndyMac verifie[d] [his] information." According to defendant, plaintiff failed to submit the required documentation necessary to verify his financial information to establish that he qualified for the modification offer. Plaintiff was notified by letter that his effort at modification had been rejected for that reason.

Since plaintiff was in default on the loan and had failed to comply with the terms of the August 2009 modification/forbearance program, on November 12, 2009, a notice of default and election to sell under deed of trust (notice of default) was recorded. The notice of default was recorded by Regional Trustee Services Corporation, which entity had been substituted in as trustee under the subject deed of trust.

On or about December 17, 2009, plaintiff was sent an application for a loan modification under the federally regulated HAMP program. Since plaintiff remained in default on the loan, a notice of trustee's sale pursuant to the deed of trust was recorded on February 16, 2010.[6] Shortly thereafter, plaintiff submitted a loan modification application under the HAMP program.

---

**6** According to the notice of trustee's sale, the property would be sold on March 8, 2010. However, since prior to that sale date the loan was under review for a permanent modification under HAMP, the foreclosure sale was intermittently postponed to allow the trial program and evaluation process under HAMP to be completed.

On February 25, 2010, based on initial information he had provided, plaintiff was approved by defendant through its servicing agent (IndyMac) for a "trial period plan" under HAMP that included a forbearance of the foreclosure proceedings while plaintiff's eligibility for a permanent modification under HAMP was verified. The terms of the trial period plan were set forth in a written document dated February 25, 2010 (the HAMP trial plan). As provided in the HAMP trial plan document, in addition to making three monthly payments of $3,410.76 (beginning on April 1, 2010), plaintiff was required to submit documentation to verify his income in order to establish that he qualified for a permanent modification under HAMP. The type of documentation that would be used to verify plaintiff's income was set forth, and a warning was given that "[i]f your verified income is different from the amount you gave us verbally, you may no longer be eligible" for a loan modification under HAMP.

In the HAMP trial plan document, defendant promised that, during the trial period, it "will not proceed to foreclosure sale …, provided [plaintiff was] complying with the terms of the trial period plan …." At the same time, the HAMP trial plan document clearly stated that the foreclosure process would proceed if plaintiff did not qualify: "During the trial period, any pending foreclosure action or proceeding will not be dismissed and may be immediately resumed if you fail to comply with the terms of the Trial Period Plan or do not qualify for a modification. A new notice of default … or similar notice will not be necessary to continue the foreclosure action .… You waive any and all rights to receive such foreclosure notices to the extent permitted by applicable law."

In compliance with the HAMP trial plan document, plaintiff made the three adjusted monthly payments for April, May and June 2010, as required, and submitted the requested financial documentation to verify his income.

By letter dated June 1, 2010, sent by IndyMac to plaintiff, plaintiff was informed that the loan did not qualify for a permanent modification under HAMP based on the

5.

federally regulated HAMP guidelines requiring that the borrower's housing expense must be greater than 31 percent of his or her gross monthly income to be eligible for a modification under HAMP. The letter explained: "Unfortunately, due to changes in your financial information since the time you submitted for a trial modification, we have determined that your loan is no longer eligible for a permanent modification under HAMP because your current monthly housing expense, which includes the monthly principal and interest payment on your first lien mortgage loan plus property taxes, hazard insurance and homeowners dues (if any) is less than or equal to 31% of your gross monthly income (your income before taxes and other deductions) which, we have verified as .… Your housing expenses must be greater than 31% of your gross monthly income to be eligible for Home Affordable Modification."[7]

Although plaintiff was determined to be ineligible for a permanent loan modification under HAMP, the June 1, 2010, letter offered to plaintiff a custom IndyMac loan modification. The terms of the offered IndyMac loan modification were not as advantageous to plaintiffs as the HAMP loan modification would have been. Pursuant to the IndyMac loan modification offered to plaintiff, the new monthly principal and interest payment would be $3,888.40, which amount did not include any additional sums that would be required for taxes and insurance. Plaintiff declined the offered IndyMac loan modification.

From defendant's perspective, since plaintiff had failed to reinstate the loan and was still in default, it was appropriate to proceed with the foreclosure process. The real property was sold at a foreclosure sale on November 16, 2010. A trustee's deed upon

---

[7]     HAMP's eligibility requirements (including the 31 percent requirement) were recently summarized in *Bushell v. JPMorgan Chase Bank, N.A*. (2013) 220 Cal.App.4th 915, 923-924. We note that beginning June 1, 2010, a borrower's financial information had to be verified by the lender before offering a HAMP trial plan. Prior to June 1, 2010, as was the case here, a lender was permitted to offer a trial plan based on the borrower's initial unverified representations, which would be verified thereafter. (*Id*. at p. 924, fn. 4.)

sale (trustee's deed) was recorded on November 30, 2010, with the Stanislaus County Recorder's Office, whereby all right, title and interest in the real property was granted to defendant.

On February 8, 2011, plaintiffs filed their lawsuit for wrongful foreclosure against defendant. At the time of the motion for summary judgment, the operative pleading was plaintiffs' fourth amended complaint, filed on July 14, 2012. The fourth amended complaint alleged that on August 22, 2006, plaintiff obtained a loan in the amount of $530,000, secured by a deed of trust against his real property in Turlock, California. When "the [r]eal [e]state [r]ecession hit," plaintiff suffered financial hardship and his income declined. At that point, he entered a program with his lender to obtain a loan modification. Allegedly, a modification of the loan was "approved" on February 25, 2010, pursuant to HAMP. Plaintiff asserted he was entitled to the HAMP loan modification, but defendant failed to perform. On June 1, 2010, plaintiff received a letter indicating that he did not qualify for HAMP after all, but defendant offered plaintiff a different loan modification on terms less favorable to plaintiff. Later, plaintiff's real property was foreclosed on, allegedly without providing plaintiff the required foreclosure notices and in violation of statutory provisions. On these general facts, plaintiffs' causes of action included: (1) declaratory relief; (2) wrongful foreclosure, (3) slander of title, (4) waiver and estoppel, (5) injunction, (6) negligence, (7) breach of contract, (8) violations of the Truth in Lending Act (TILA; U.S.C. § 1601 et seq.), and (9) fraud and misrepresentation.

On November 8, 2012, defendant filed its motion for summary judgment and/or for summary adjudication. The motion was based on the asserted undisputed facts that plaintiffs were not guaranteed a HAMP loan modification, since it was always subject to income verification, and that plaintiffs turned down the loan modification that defendant did offer once it became clear that a HAMP modification was not available, leaving the

7.

loan in default and the real property subject to defendant's foreclosure remedy, which defendant properly pursued and completed.

On or about January 15, 2013, plaintiffs filed their opposition to the motion for summary judgment and/or summary adjudication. No declaration was filed with the opposition. The opposition papers included plaintiffs' memorandum of points and authorities, plaintiffs' separate statement and plaintiffs' request for judicial notice. The request for judicial notice included pages 40 to 60 of plaintiff Benjamin Hetrick's deposition testimony, a copy of the third amended complaint and plaintiffs' response to production of documents, set one. The latter included an itemized listing of documents.[8] Plaintiffs' opposition was directed to the merits of defendant's motion. However, plaintiffs' memorandum of points and authorities briefly perfunctorily observed: "Plaintiffs also note that they have a motion to compel production of Discovery and must then do depositions. Defendant is opposing providing discovery. This motion [for summary judgment] is premature."

On January 23, 2013, defendant filed its reply papers in support of its motion for summary judgment and/or summary adjudication. Defendant's reply asserted that the motion should be granted because plaintiffs' opposition presented "absolutely no evidence showing a triable issue of material fact," and plaintiffs merely continued to make the same conclusory and unsupported allegations set forth in their pleadings. As to the argument that the motion was "premature," defendant pointed out that plaintiffs failed to mention that the discovery motion they referred to "has already been denied" and, in any event, "Plaintiffs' contention that the Court should delay in ruling on [defendant's] Motion because of any alleged discovery dispute is wholly meritless in that Plaintiffs

---

[8] The actual documents are not provided, at least not in the copy of the request for judicial notice (in opposition to the motion for summary judgment) contained in the record on appeal submitted to this court by plaintiffs. In any event, the descriptions of documents on the list appear to correspond to the same events and transactions that we have summarized above.

have had almost two (2) years to conduct discovery. Additionally, [defendant] timely and substantively responded to Plaintiffs' discovery requests."

The hearing of the motion for summary judgment and/or summary adjudication was held on February 6, 2013. The trial court took the matter under submission and, on February 11, 2013, issued a minute order stating its decision to grant the motion. A formal written order granting summary judgment was entered on March 15, 2013.

Plaintiffs' timely appeal followed. Their appeal claims, among other things, that the trial court erred in failing to grant a discovery motion and in failing to continue the motion for summary judgment and/or summary adjudication based on plaintiffs' alleged need of additional time for discovery. The appeal also challenges several of the trial court's rulings in which plaintiffs sought relief from the trial court's orders, including motions for reconsideration, a motion for relief under section 473 and a motion for new trial. Finally, plaintiffs argue the trial court erred in granting the motion for summary judgment because, allegedly, defendant was not entitled to judgment as a matter of law.

In the discussion that follows, we shall address the issues in approximately the same order as the parties have done in their briefing.

## DISCUSSION

### I.    Plaintiffs' Burden as Appellants

Preliminarily, we highlight some of the fundamental principles that are applicable when a party files an appeal.

Because a judgment or order of a lower court is presumed to be correct on appeal, error must be affirmatively shown. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) Thus, an appellant must affirmatively show prejudicial error based on adequate legal argument and citation to the record. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655-656; *Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 556-557; *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856; *McComber v. Wells* (1999) 72 Cal.App.4th

9.

512, 522-523.) "[T]he trial court's judgment is presumed to be correct, and the appellant has the burden to prove otherwise by presenting legal authority on each point made and factual analysis, supported by appropriate citations to the material facts in the record; otherwise, the argument may be deemed forfeited." (*Keyes v. Bowen*, *supra*, at p. 655.) When points are perfunctorily raised, without adequate analysis and authority or without citation to an adequate record, the appellate court may pass them over and treat them as abandoned or forfeited. (*People v. Stanley* (1995) 10 Cal.4th 764, 793; *Landry v. Berryessa Union School Dist*. (1995) 39 Cal.App.4th 691, 699-700; *Placer County Local Agency Formation Com. v. Nevada County Local Agency Formation Com*. (2006) 135 Cal.App.4th 793, 814 ["We need not address points in appellate briefs that are unsupported by adequate factual or legal analysis."].) As will be seen, plaintiffs failed to meet their initial burden as appellants concerning a number of issues in the instant appeal.

**II.     No Abuse of Discretion Shown in Trial Court's Denial of Discovery Motion**

Plaintiffs contend that the trial court erred in denying their motion to compel further responses to discovery requests. A trial court's determination of a motion to compel discovery is reviewed under the deferential abuse of discretion standard. (*Pirjada v. Superior Court* (2011) 201 Cal.App.4th 1074, 1085-1086; *Pomona Valley Hospital Medical Center v. Superior Court* (2012) 209 Cal.App.4th 687, 692.) "'[A] reviewing court generally will not substitute its opinion for that of the trial court and will not set aside the trial court's decision unless "there was 'no legal justification' for the order granting or denying the discovery in question."' [Citation]" (*Pirjada v. Superior Court*, *supra*, at p. 1085.)

The subject discovery motion was filed on November 16, 2012, shortly after defendant's motion for summary judgment was filed. Plaintiffs' discovery motion sought to compel further responses to form interrogatories, special interrogatories, and request for production of documents. The trial court denied the motion. As defendant points out, plaintiffs' motion failed to comply with fundamental procedural requirements relating to

10.

motions to compel further discovery responses. According to defendant, such failures on plaintiffs' part clearly justified the trial court's denial of the discovery motion. We agree with defendant.

A motion to compel further responses to interrogatories and/or document requests must provide a "separate statement" as specified at California Rules of Court, rule 3.1345.[9] "The separate statement must include—for each discovery request … to which a further response, answer, or production is requested—the following: [¶] (1) The text of the request, interrogatory, question or inspection demand; [¶] (2) The text of each response, answer, or objection, and any further responses or answers; [¶] (3) A statement of the factual and legal reasons for compelling further responses, answers, or production as to each matter in dispute …." (Rule 3.1345(c).) Failure to include a separate statement as required by the California Rules of Court provides justification for a trial court to deny a motion to compel further discovery responses. (*Mills v. U.S. Bank* (2008) 166 Cal.App.4th 871, 893.) Here, plaintiffs' motion did not include a separate statement, as required.

Additionally, prior to filing a motion to compel further discovery responses, the moving party is required to submit a declaration substantiating that a reasonable and good faith effort at an informal resolution of each issue presented in the motion was made. (§§ 2030.300, subd. (b), 2031.310, subd. (b)(2), 2016.040.) It must be shown there was "a serious effort at negotiation and informal resolution" of each issue. (*Townsend v. Superior Court* (1998) 61 Cal.App.4th 1431, 1435, 1438.) "[T]he law requires that counsel attempt to talk the matter over, compare their views, consult and deliberate." (*Id.* at p. 1439.)[10] Here, it is clear that no serious or good faith effort was made prior to filing

---

[9] Unless otherwise indicated, all further references to rules are to the California Rules of Court.

[10] While not every instance of an inadequate effort at informal resolution requires a complete denial of discovery (see *Obregon v. Superior Court* (1998) 67 Cal.App.4th 424, 433-

11.

the motion. Plaintiffs' counsel merely sent a last-minute conclusory e-mail and letter, claiming that responses were inadequate, approximately three days before filing the motion.[11] Further, defendant's counsel sent a fairly detailed responsive letter, but plaintiffs proceeded to file their motion without any serious effort to discuss, consult or negotiate. We conclude that plaintiffs failed as a matter of law to comply with the statutory meet and confer requirement.

Because plaintiffs failed to file and serve a separate statement and failed to show that they met and conferred prior to filing the motion, we conclude the trial court did not abuse its discretion in denying the discovery motion.[12]

*No Abuse of Discretion Shown in Trial Court's Denial of Reconsideration Motion*

Additionally, we reject plaintiffs' claim on appeal that the trial court should have granted their motion for reconsideration under section 1008 of the trial court's denial of the discovery motion. Plaintiffs' opening brief failed to provide any meaningful legal or factual analysis or discussion, nor any precise citation to the record. Accordingly, we treat the issue of reconsideration of the subject discovery motion under section 1008 as forfeited on appeal by plaintiffs. (*Keyes v. Bowen*, *supra*, 189 Cal.App.4th at pp. 655-656.)[13]

---

434), the failure here, combined with the failure to serve and file a separate statement, clearly reflected that the trial court's broad discretion was not abused.

[11] The e-mail sent by plaintiffs' counsel on Monday, November 12, 2012, demanded further responses by Wednesday, November 14, 2012, or else a motion would be filed. It claimed, in conclusory fashion, that the responses were inadequate. His letter faxed the next day was little better.

[12] Moreover, in addition to the procedural obstacles, the record on appeal is insufficient to indicate the adequacy or inadequacy of the responses, the merits of objections, etc. Plaintiffs have failed to meet their burden of demonstrating an error or abuse of discretion.

[13] The same is true of plaintiffs' perfunctory claim that the trial court should have granted section 473, subdivision (a), relief to plaintiffs by treating the discovery motion as "amended" to include the missing separate statement. The argument is forfeited on appeal.

12.

**III. No Abuse of Discretion Shown in Trial Court's Failure to Continue Summary Judgment Hearing**

Plaintiffs contend that because their opposition mentioned that discovery was still pending, the trial court erred in granting the summary judgment motion. Allegedly, the trial court "ignored" section 437c, subdivision (h), when it granted the motion rather than continuing the hearing to permit further discovery. We disagree. Preliminarily, we note that we apply the abuse of discretion standard of review to the trial court's decision whether or not to continue the hearing of a summary judgment motion for the purpose of permitting additional discovery. (*Combs v. Skyriver Communications, Inc*. (2008) 159 Cal.App.4th 1242, 1270.)

Section 437c, subdivision (h), states:

> "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just. The application to continue the motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion is due."

An opposing party who seeks a continuance of the motion under subdivision (h) of section 437c must show by declaration that (1) the facts sought to be obtained are essential to opposing the motion; (2) there is reason to believe such facts may exist; and (3) the reasons why additional time is needed to obtain these facts. (*Combs v. Skyriver Communications, Inc*., *supra*, 159 Cal.App.4th at p. 1270; *Ace American Ins. Co. v. Walker* (2004) 121 Cal.App.4th 1017, 1023.) The elements of section 437c, subdivision (h), which must be shown by the opposing party's declaration, have been more fully and specifically elaborated as follows: "(1) '*Facts* establishing *a likelihood that controverting evidence may exist* and *why* the information sought is *essential* to opposing the motion'; (2) 'The *specific reasons* why such evidence cannot be presented at the present time'; (3) 'An estimate of the *time* necessary to obtain such evidence'; and

13.

(4) 'The specific steps or procedures the opposing party intends to utilize to obtain such evidence.'" (*Johnson v. Alameda County Medical Center* (2012) 205 Cal.App.4th 521, 532, quoting Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2011) ¶ 10:207.15, p. 10-83 (rev. # 1, 2011).)

Unless a declaration is submitted to make the required showing, the trial court is not required to grant the requested continuance and instead has considerable discretion to deny it. (*Johnson v. Alameda County Medical Center*, *supra*, 205 Cal.App.4th at p. 532; *Combs v. Skyriver Communications, Inc*., *supra*, 159 Cal.App.4th at p. 1270.) The timing of the submittal of the declaration requesting a continuance is also important. The statute requires that it must be made in the opposition affidavits (i.e., opposition declarations), or by an ex parte application prior to the date the opposition is due. (§ 437c, subd. (h); *Ambrose v. Michelin North America*, *Inc*. (2005) 134 Cal.App.4th 1350, 1353 [continuance properly denied where request was untimely and the tardy declaration did not satisfy elements of section 437c, subdivision (h)].)

Moreover, "[t]he statute cannot be employed as a device to get an automatic continuance by every unprepared party who simply files a declaration stating that unspecified essential facts may exist. The party seeking the continuance must justify the need, by detailing both the particular essential facts that may exist and the specific reasons why they cannot then be presented." (*Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 715-716.)

Here, plaintiffs failed to submit a *declaration* with their opposition papers requesting a continuance and reciting the necessary facts and circumstances to obtain such relief under subdivision (h) of section 437c. Plaintiffs' argument (i.e., memorandum of points and authorities) in opposition to the motion merely contained a statement that discovery was still pending. That was utterly insufficient to comply with the requirements of section 437c, subdivision (h). We conclude the trial court was well within its discretion in declining to grant a continuance of the hearing.

14.

*No Abuse of Discretion Shown in Trial Court's Denial of Reconsideration of Section 437c, Subdivision (h) Request*

We also reject plaintiffs' claim that the trial court should have subsequently "reconsidered," pursuant to plaintiffs' section 1008 motion, the issue of continuing the summary judgment hearing (and/or denying the motion) under subdivision (h) of section 437c based on allegedly pending discovery issues. We review a trial court's ruling on a motion for reconsideration under the abuse of discretion standard. (*Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1457.) A party seeking reconsideration must provide a satisfactory explanation for the failure to produce the evidence at an earlier time. (*Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 689.) Here, plaintiffs' reconsideration motion did not present any facts or circumstances that could not have been presented earlier—i.e., in opposition to the motion for summary judgment. (*Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1460, 1468 [if facts could have been produced earlier, no basis for reconsideration shown].) Therefore, the trial court's denial of the reconsideration request was proper and was not an abuse of discretion.

Furthermore, plaintiffs' tardy and conclusory declaration under subdivision (h) of section 437c failed to show that facts obtainable by discovery were essential to plaintiffs' opposition to the motion. In short, plaintiffs' effort at a reconsideration of section 437c, subdivision (h) issues, by means of a motion heard after the trial court had already issued its minute order granting the motion for summary judgment, was (1) manifestly untimely under subdivision (h) of section 437c and (2) insufficient as a matter of law to comply with the substantive requirements of either subdivision (h) of section 437c or section 1008. Finally, plaintiffs' opening brief failed to provide adequate legal and factual discussion or analysis of this matter, and failed to make a precise citation to the relevant record below. Therefore, we consider the issue of section 1008 reconsideration of the section 437c, subdivision (h) issue to be forfeited on appeal.

**IV.    No Abuse of Discretion Shown in Trial Court's Denial of Relief Under Section 473, Subdivision (b)**

Plaintiffs argue the trial court should have granted their motion for relief under the provisions of section 473, subdivision (b) (section 473(b)). We discern no abuse of discretion. The motion was heard on March 12, 2013, which was after the trial court issued its minute order granting summary judgment but before the formal written order granting summary judgment was entered.

We begin with a brief overview of the legal principles involved in a section 473(b) motion. A motion for relief from a judgment, order or other proceeding may be made on the ground that it was taken against the moving party as a result of mistake, inadvertence, surprise or excusable neglect. (§ 473(b).) Whether to grant such relief lies within the sound discretion of the trial court, and the trial court's decision will not be overturned absent an abuse of discretion. (*Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233 (*Elston*).) The discretionary relief provided under section 473(b) is applied liberally where the party moves promptly to seek relief and no prejudice will be suffered by the party opposing the motion if relief is granted. In such instances, only very slight evidence is needed to justify relief. (*Elston*, *supra*, at p. 233; *Rogalski v. Nabers Cadillac* (1992) 11 Cal.App.4th 816, 819-820) Additionally, because the law favors trial on the merits, doubts are to be resolved in favor of the party seeking relief. As a result, a trial court order denying relief is more closely scrutinized on appeal than an order permitting trial on the merits. (*Elston*, *supra*, at p. 233.)

In addition to the discretionary relief noted above, section 473(b) provides for *mandatory* relief based on an attorney affidavit of fault. The mandatory relief provision of section 473(b) provides that the court "*shall*, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk

16.

against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (Italics added.) "Relief [under the attorney fault provision of section 473] is mandatory when a complying affidavit is filed, even if the attorney's neglect was inexcusable." (*Rodrigues v. Superior Court* (2005) 127 Cal.App.4th 1027, 1033.)

Here, plaintiffs' argument is apparently that the trial court should have granted their motion for relief under section 473(b) by allowing plaintiffs to file a tardy, separate statement in support of its previously denied motion to compel further responses to discovery, and assuming that such relief was granted and that the discovery motion was also granted, the trial court should then have denied the summary judgment motion on the ground that discovery was still pending.

Preliminarily, we note that plaintiffs' appeal failed to reference any evidence in the record supporting grounds for relief under section 473(b). Defendant has furnished exhibits in its respondent's appendix, and has drawn our attention to a supplemental declaration by plaintiffs' attorney, Richard Sinclair, filed in connection with the section 473(b) motion, wherein he merely stated that in his legal practice in which he had been handling litigation matters for over 10 years, he never read the applicable Rules of Court that relate to discovery motions, and he was ignorant of the requirement to provide a separate statement in discovery motions to compel further responses. The trial court concluded that plaintiffs had failed to show *excusable* mistake, inadvertence, surprise or neglect as to the discretionary relief provision of section 473(b).[14] On that basis, the trial

---

**14** Additionally, as noted by defendant, plaintiffs' motion for relief failed to mention the procedurally defective nature of the underlying motion to compel (i.e., no declaration showing a reasonable and good faith effort to informally resolve issues) and failed to explain why plaintiffs believed the responses provided by defendant were deficient or objections without merit.

court denied plaintiffs' motion. We are unable to discern any error in the trial court's conclusion, and plaintiffs have failed to demonstrate that this holding by the trial court was an abuse of discretion.

Moreover, plaintiffs are not assisted here by the mandatory provision of section 473(b). The mandatory provisions of section 473(b) require relief to be granted from a default, default judgment or dismissal entered as a result of the attorney's fault where that attorney submits an affidavit of fault in support of the motion. Since the mandatory provision relates only to defaults, default judgments and dismissals, most recent appellate cases addressing the issue have held that such provision is inapplicable to a summary judgment motion. (*Las Vegas Land & Development Co., LLC v. Wilkie Way, LLC* (2013) 219 Cal.App.4th 1086, 1091 (*Las Vegas Land*); *Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1418; *Prieto v. Loyola Marymount University* (2005) 132 Cal.App.4th 290, 297; *English v. IKON Business Solutions, Inc*. (2001) 94 Cal.App.4th 130, 143.) The rationale of the above cases is that a grant of summary judgment after a hearing is manifestly not a default, default judgment or dismissal. (*Las Vegas Land*, *supra*, at pp. 1091-1092.) In one earlier appellate decision, *Avila v. Chua* (1997) 57 Cal.App.4th 860, the court was willing to apply the mandatory relief provision where a summary judgment motion was granted by the trial court under circumstances that were deemed "analogous to a default judgment." (*Id*. at p. 868.) In that case, since the motion was granted after striking the plaintiff's untimely opposition papers, the court concluded it was sufficiently analogous to a default judgment to allow application of the mandatory provision of section 473(b). (*Ibid*.)

Here, plaintiffs filed opposition to the motion for summary judgment, a hearing was held, the parties argued the matter through their respective legal counsel, and afterwards, the trial court granted the motion. We conclude that the nature of the order entered by the trial court was *not* a default, default judgment, dismissal, *nor* anything remotely analogous thereto. Accordingly, the mandatory relief provision was

18.

inapplicable. For all of the foregoing reasons, the trial court correctly denied the motion for relief under section 473.

## V. No Abuse of Discretion Shown in Trial Court's Denial of Trial Continuance

Plaintiffs contend the trial court erred by failing to continue the hearing of the trial date. Since summary judgment was granted prior to the trial date, we fail to see how the trial court's denial of plaintiffs' request for a trial continuance has any bearing on the disposition of the matter before us. In any event, plaintiffs have failed to demonstrate that the trial court abused its discretion. The California Rules of Court provide: "To ensure the prompt disposition of civil cases, the dates assigned for a trial are firm. All parties and their counsel must regard the date set for trial as certain." (Rule 3.1332(a).) Moreover, "continuances of trial are disfavored …." (Rule 3.1332(c).) The trial court may grant a motion to continue trial "only on an affirmative showing of good cause requiring the continuance." (*Ibid*.) The motion must be made "as soon as reasonably practical once the necessity for the continuance is discovered." (Rule 3.1332(b).) When a motion to continue trial is made, the trial court will consider all the relevant circumstances that may indicate whether good cause exists, including unavailability of witnesses, parties or counsel due to death, illness or other excusable circumstances (rule 3.1332(c)(1)-(3)), "[a] party's excused inability to obtain essential testimony, documents, or other material evidence despite diligent efforts" (rule 3.1332(c)(6), and "[a] significant, unanticipated change in the status of the case as a result of which the case is not ready for trial" (rule 3.1332(c)(7)).

Other factors to be considered by the trial court include: (1) the proximity to the trial date; (2) whether there was any previous continuance, extension of time, or delay of trial due to any party; (3) the length of the continuance requested; (4) the availability of alternative means to address the problem that gave rise to the motion for a continuance; (5) the prejudice that parties or witnesses will suffer as a result of the continuance; (6) whether the case is entitled to preferential trial setting; (7) the trial court's calendar;

19.

(8) whether trial counsel is engaged in another trial; (9) whether all parties have stipulated to a continuance; (10) whether the interests of justice are best service by a continuance, by the trial of the matter, or by imposing conditions on the continuance; and (11) any other fact or circumstance relevant to the fair determination of the motion. (Rule 3.1332(d).)

Here, as pointed out by defendant, plaintiffs filed their lawsuit in February 2011, yet failed to commence any discovery until September 2012. The motion to continue was noticed for March 1, 2013, which hearing date was approximately one month prior to the original trial date of April 9, 2013. By the time the motion to continue trial was heard, the case had been pending for over two years and plaintiffs had the opportunity to amend their complaint four times. Also, by the time the motion to continue was heard, the summary judgment motion had already been briefed, heard, taken under submission, and the trial court had issued its minute order to grant the summary judgment motion. Plaintiffs' motion to continue trial made vague and conclusory references to plaintiffs learning of the existence of other potential defendants located out-of-state and also to attorney Sinclair's alleged disability, but the motion failed to provide relevant dates and sufficient factual detail to show diligence and to confirm that these matters actually constituted good cause. We conclude, based on the close proximity to the trial date, the apparent lack of diligence on plaintiffs' part, and the failure to affirmatively show good cause, that the trial court did not abuse its discretion when it denied plaintiffs' motion to continue trial.

## VI.    Trial Court Correctly Granted Defendant's Motion for Summary Judgment

Plaintiffs contend the trial court erred in granting summary judgment in favor of defendant. As explained in our discussion below, we conclude that plaintiffs' appeal of the summary judgment ruling fails on two fronts: First, plaintiffs did not meet their fundamental burden as appellants of adequately addressing the issues in their opening

20.

brief; second, the record before us reflects that the trial court correctly granted summary judgment.  In short, error has not been demonstrated by plaintiffs and, therefore. we will affirm the trial court's ruling.

### A.    *Plaintiffs' Failure to Meet Burden on Appeal*

We repeat and expand on the nature of an appellant's burden on appeal, because those threshold requirements have direct application here.  Because a judgment or order of a lower court is presumed to be correct on appeal, error must be affirmatively shown. (*Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564; *In re Marriage of Arceneaux*, *supra*, 51 Cal.3d at p. 1133.)  Thus, an appellant must affirmatively show prejudicial error based on adequate legal argument and citation to the record.  (*Keyes v. Bowen*, *supra*, 189 Cal.App.4th at pp. 655-656; *Yield Dynamics, Inc. v. TEA Systems Corp.*, *supra*, 154 Cal.App.4th at pp. 556-557; *Duarte v. Chino Community Hospital*, *supra*, 72 Cal.App.4th at p. 856; *McComber v. Wells*, *supra*, 72 Cal.App.4th at pp. 522-523.) "[T]he trial court's judgment is presumed to be correct, and the appellant has the burden to prove otherwise by presenting legal authority on each point made and factual analysis, supported by appropriate citations to the material facts in the record; otherwise, the argument may be deemed forfeited." (*Keyes v. Bowen*, *supra*, at p. 655.)  When points are perfunctorily raised, without adequate analysis and authority or without citation to an adequate record, the appellate court may pass them over and treat them as abandoned or forfeited.  (*People v. Stanley*, *supra*, 10 Cal.4th at p. 793; *Landry v. Berryessa Union School Dist.*, *supra*, 39 Cal.App.4th at pp.  699-700 [issue deemed abandoned where the appellant cited only general principles governing the motion without applying those principles to the circumstances before the court].)

"'It is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations.'  [Citations.]" (*Duarte v. Chino Community Hospital*, *supra*, 72 Cal.App.4th at p. 856.)  "'If a party fails to support an argument with the necessary citations to the record, … the argument [will

be] deemed to have been waived. [Citation.]' [Citation.]" (*Sky River LLC v. County of Kern* (2013) 214 Cal.App.4th 720, 740-741.) The rule applies to matters referenced at any point in the brief, not just in the statement of facts. (*Ibid.*)

In *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, the appellant had contended, without specific citation to the record, that "'a plethora of admissible evidence'" reflected that triable issues of fact existed precluding the granting of summary judgment. (*Id.* at p. 1115.) The appellate court rejected this challenge, concluding that the appellant's failure to adequately cite the record waived such challenge on appeal. (*Id.* at pp. 1115-1116.) The appellate court further explained: ""'"Instead of a fair and sincere effort to show that the trial court was wrong, [the] appellant's brief is a mere challenge to [the] respondents to prove that the court was right."'" [Citation.] Therefore, [the appellant's] contention that the trial court erred by granting [the] defendants' motion for summary judgment is deemed waived." (*Id.* at pp. 1115-1116.)

In view of an appellant's burden to affirmatively show prejudicial error, his or her opening brief must apprise the opposing party and the appellate court of those alleged errors and/or identify the specific questions to be decided on appeal, with supporting argument. "[T]he appellant must present each point separately in the opening brief under an appropriate heading, showing the nature of the question to be presented and the point to be made; otherwise, the point will be forfeited." (*Keyes v. Bowen*, *supra*, 189 Cal.App.4th at p. 656; rule 8.204(a)(1)(B); *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830-1831, fn. 4.) This rule is "designed to lighten the labors of the appellate tribunals by requiring the litigants to present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass." (*Landa v. Steinberg* (1932) 126 Cal.App. 324, 325.) An opening brief that fails to comply with this rule "is equally confusing to

the respondent, who labors under an unwarranted handicap in attempting to understandingly reply." (*Ibid.*)

In the present appeal, plaintiffs' opening brief failed to meet the threshold burden required of all appellants. Rather than identifying the trial court's purported errors by making specific citation to the record below with cogent legal analysis concerning each point raised, plaintiffs' opening brief is little more than a cut-and-paste reproduction of their memorandum of points and authority filed in the trial court. Moreover, although plaintiffs' opening brief references the location in the record of their *entire* separate statement (filed in opposition to defendant's motion), nowhere in the course of plaintiffs' particular arguments do they refer us to the particular portion of the record below that allegedly supported each point in question. Such generalized argument, which failed to adequately cite the page and line of the record to support the purported claims of error, was insufficient to meet plaintiffs' burden as appellants to affirmatively demonstrate error. Additionally, plaintiffs' legal discussion in its opening brief is presented in such a conclusory, disjointed and shotgun fashion, we find it to be largely unintelligible. For all of these reasons, we conclude that plaintiffs' arguments concerning the summary judgment motion are deemed waived or forfeited on appeal. Consequently, the presumption that the judgment is correct must prevail.

B.      *Summary Judgment Was Properly Granted*

In any event, even if we examined the merits of the order granting summary judgment, plaintiffs' appeal would fail. That is, defendant's motion successfully showed under undisputed facts that plaintiffs' causes of action were without merit, and plaintiffs' opposition failed to demonstrate the existence of a triable issue of material fact. (§ 437c, subd. (p)(2).) Thus, even under a de novo review of the trial court's grant of summary judgment, we would affirm the order and the resulting judgment entered by the trial court.

23.

We begin with a brief overview of the legal principles applicable to summary judgment and summary adjudication motions. Summary judgment is appropriate when all of the papers submitted show there is no triable issue of material fact and the moving party is entitled to a judgment as a matter of law. (§ 437c, subd. (c).) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843.)

A defendant may move for summary judgment if it is contended that the action has no merit. (§ 437c, subd. (a).) A defendant moving for summary judgment has the initial burden of showing a cause of action is without merit. A defendant meets that burden by showing that one or more elements of the cause of action cannot be established, or that there is a complete defense thereto. (*Id*., subd. (p)(2).) If the defendant makes such a showing, the burden shifts to the plaintiff to produce evidence demonstrating the existence of a triable issue of material fact. (*Ibid*.; *Aguilar v. Atlantic Richfield Co*., *supra*, 25 Cal.4th at p. 849.)

On appeal from a summary judgment, our task is to independently determine whether an issue of material fact exists and whether the moving party is entitled to summary judgment as a matter of law. (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1601.) "We independently review the parties' papers supporting and opposing the motion, using the same method of analysis as the trial court. Essentially, we assume the role of the trial court and apply the same rules and standards." (*Kline v. Turner* (2001) 87 Cal.App.4th 1369, 1373.) We apply the same three-step analysis required of the trial court. First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond. Second, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in the moving party's favor. When a summary judgment motion prima facie justifies a

judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable issue of material fact. (*Hamburg v. Wal-Mart Stores, Inc*. (2004) 116 Cal.App.4th 497, 503; *Chevron U.S.A., Inc. v. Superior Court* (1992) 4 Cal.App.4th 544, 548.) In so doing, we liberally construe the opposing party's evidence, strictly construe the moving party's evidence, and resolve all doubts in favor of the opposing party. (*Johnson v. American Standard, Inc*. (2008) 43 Cal.4th 56, 64; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

The thrust of defendant's summary judgment motion was that, in light of plaintiffs' default on the loan and failure to cure that default, defendant properly carried out its nonjudicial foreclosure remedy under the deed of trust. Although foreclosure proceedings were for a time in forbearance while the proposed HAMP loan modification went through a verification process, it was ultimately determined by defendant that plaintiffs were not entitled to a HAMP loan modification due to plaintiff's income level in relation to housing expenses (i.e., the borrower's housing expenses had to be greater than 31% of gross monthly income). Defendant proceeded to hold the trustee's sale regarding the real property (i.e., foreclosed) only after plaintiff (1) failed to qualify for the HAMP loan modification and (2) declined the alternative loan modification offered by defendant. The documentation had made clear that plaintiff was not guaranteed a HAMP loan modification and that if plaintiff did not qualify, there would be no HAMP loan modification. Hence, according to defendant's motion, when defendant subsequently proceeded to foreclose on the deed of trust after the forbearance period ended, no factual basis existed for claiming wrongful foreclosure, breach of promise or other wrongdoing as a matter of law. (See defendant's separate statement of undisputed material facts in support of motion for summary judgment, etc. (defendant's separate statement), facts Nos. 1-47, and evidence referenced therein.)

As correctly pointed out by defendant, plaintiffs' opening brief on appeal (as was the case with plaintiffs' opposition to the motion for summary judgment) makes a

25.

number of general arguments, but fails to squarely address any of the undisputed facts presented in defendant's motion and does not reference any evidence adequate to show the existence of a triable issue of material fact.

### 1. *Defendant's Authority to Foreclose*

Preliminarily, we address an issue argued by plaintiffs with respect to all of the causes of action—namely, that defendant did not have authority to initiate foreclosure. First, contrary to plaintiffs' contention that defendant lacked authority to foreclose, we conclude that defendant's status and authority to initiate foreclosure proceedings was clear and undisputed based on the relevant instruments. Under the express terms of the deed of trust, MERS was initially the nominee of the lender (and of the lender's successors and assigns) and was also the beneficiary under the deed of trust. The deed of trust expressly secured the repayment of the loan and all extensions or modifications thereof, and included plaintiff's grant of a power of sale to the trustee. In November 2009, MERS, as the lender's nominee and as beneficiary under the deed of trust, assigned all of its beneficial interest in the deed of trust, together with all its rights concerning the loan or note therein described, to defendant. During the relevant time period, OneWest Bank, FSB, through its servicing division, IndyMac, was the servicing agent on behalf of defendant. In 2009, a substitution of trustee named Regional Service Corporation as trustee under the deed of trust. Based on this undisputed record, it is clear that defendant had acquired all beneficial interest in the deed of trust as well as rights to enforce the loan, and had full authority to cause its agents to commence foreclosure proceedings against the real property following plaintiffs' default on the loan. (See *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830 ["Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale."]; Civ. Code, § 2924, subd. (a)(1) [nonjudicial foreclosure may be initiated by a trustee, beneficiary or "any of their authorized agents"]; see also *Calvo v. HSBC Bank USA, N.A.* (2011) 199

Cal.App.4th 118, 125; *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 266, 269-271 [MERS assignment of rights as beneficiary and nominee upheld].)[15]

### 2. *Each Cause of Action Defeated by Defendant's Motion*

We now address the particular causes of action in the fourth amended complaint to confirm whether defendant's motion met its initial burden as the moving party regarding each separate cause of action and to ascertain whether plaintiffs' opposition specified evidence creating a triable issue of material fact with respect to such cause of action. (§ 437c, subd. (p)(2).)

### a. *First Cause of Action for Declaratory Relief*

Plaintiffs' first cause of action requested a judicial declaration that defendant wrongfully foreclosed on the real property based on (among other things) alleged irregularities, failure to adequately serve a foreclosure notice, breach of obligation to provide a HAMP modification, etc. As established by plaintiffs' own pleading as well as by the factual summary provided in defendant's separate statement, this cause of action failed as a matter of law because declaratory relief operates prospectively to declare future rights, not redress past wrongs. (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 607; accord, *Kirkwood v. California State Automobile Assn. Inter-Ins. Bureau* (2011) 193 Cal.App.4th 49, 59.) It is undisputed that this case was entirely about alleged past wrongs. Accordingly, defendant was entitled to summary adjudication of the first cause of action.

---

**15** Contrary to plaintiffs' suggestion, the original note need not be held by, or in defendant's possession, to foreclose on the deed of trust. (*Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 440.) Moreover, the foreclosing party need not have actual beneficial interest in both the deed of trust and promissory note to commence and execute a foreclosure sale. (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 513, 518.) It is enough to have the beneficial interest in the deed of trust.

b.      *Second Cause of Action for Wrongful Foreclosure*

"To obtain the equitable set-aside of a trustee's sale or maintain a wrongful foreclosure claim, a plaintiff must allege that (1) the defendants caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2) the plaintiff suffered prejudice or harm; and (3) the plaintiff tendered the amount of the secured indebtedness or was excused from tendering." (*Chavez v. IndyMac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1062.)[16] Plaintiffs' second cause of action alleged that defendant wrongfully foreclosed on the real property based on (among other things) alleged procedural irregularities, failure to adequately serve a foreclosure notice, failure to provide plaintiff his rights under Civil Code section 2923.5, and a breach of obligation to provide a HAMP loan modification.

In its summary judgment motion, defendant's separate statement presented the relevant facts of the original loan transaction, defendant's status and right to initiate foreclosure, plaintiff's default on the loan, the recording of a notice of default and a notice of trustee's sale, the effort to modify the loan pursuant to HAMP while foreclosure proceedings were in forbearance during the HAMP review process, the determination by defendant that plaintiff was ineligible for a HAMP modification because his verified income exceeded 31 percent of housing expenses, plaintiff's rejection of the custom IndyMac loan modification offered by defendant, and the eventual completion of foreclosure by means of a trustee's sale. (See defendant's separate statement, facts Nos. 1-26, relating to the second cause of action.)

---

**16**      "Recognized exceptions to the tender rule include when (1) the underlying debt is void, (2) the foreclosure sale or trustee's deed is void on its face, (3) a counterclaim offsets the amount due, (4) specific circumstances make it inequitable to enforce the debt against the party challenging the sale, or (5) the foreclosure sale has not yet occurred." (*Chavez v. IndyMac Mortgage Services*, *supra*, 219 Cal.App.4th at p. 1062.) No such exceptions were asserted here, and none are apparent.

28.

We believe that defendant's showing was sufficient to establish that plaintiffs' claim for wrongful foreclosure was without merit. This is so for several reasons. First, to the extent the cause of action was premised on the HAMP loan modification, defendant's showing was adequate to establish that it did not breach any obligation to plaintiffs. The facts set forth in defendant's separate statement reflected that plaintiff had to verify his income in order to qualify for a permanent loan modification. Moreover, the documents relating to the HAMP trial plan clearly stated that if his verified income differed from what had been originally reported, "[h]e may no longer be eligible" for a HAMP modification. Thus, the HAMP trial plan documents did not make a guarantee or an unconditional promise that plaintiff would necessarily receive a permanent loan modification. IndyMac's June 1, 2010, letter notified plaintiff that, in light of "federally regulated HAMP guidelines … that the borrower's housing expense must be greater than 31% of … gross monthly income," plaintiff did not qualify for a HAMP loan modification. This evidence showed, at least in a prima facie sense, that no specific promise was breached by defendant, since an eligibility condition for providing the HAMP modification was unmet. Thus, the burden shifted to plaintiffs to show a triable issue of fact, which they failed to do.

Second, to the extent that plaintiffs' cause of action was premised on purported irregularities in the recorded instruments or foreclosure notices, defendant met its burden as the moving party. The fact that defendant duly recorded the notice of default, the notice of trustee's sale and the trustee's deed was established by evidence in defendant's separate statement and plaintiffs' opposition failed to present evidence creating a triable issue of fact. Furthermore, the trustee's deed itself recited that the notices required by law were properly mailed and posted. Nothing in plaintiffs' opposition to the summary judgment motion referred to competent evidence showing that foreclosure notices were

not properly served, posted or recorded.[17]  Additionally, we note that a nonjudicial foreclosure is accompanied by a presumption that it was conducted regularly and fairly. (*Melendrez v. D&I Investment, Inc*. (2005) 127 Cal.App.4th 1238, 1258.)  This presumption may only be rebutted by substantial evidence of prejudicial procedural irregularity.  (*Ibid*.; accord, *Herrera v. Federal National Mortgage Assn*. (2012) 205 Cal.App.4th 1495, 1505.)  It was further undisputed that when plaintiff entered the HAMP trial plan, he agreed the pending foreclosure would not be dismissed and may be immediately resumed if he failed to qualify for a HAMP loan modification, without defendant needing to provide new or further notice.  We conclude that defendant met its initial burden on this claim, the burden shifted to plaintiffs, and plaintiffs failed to specify any evidence in opposition to the summary judgment motion that would create a triable issue of material fact regarding the alleged irregularity of the foreclosure proceedings and/or foreclosure notices.[18]

Third, plaintiff admitted he could not tender the amount due under the loan.  Of course, tender must be made in good faith; the party making the tender must have the ability to perform; and the tender must be unconditional.  (See, e.g., *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112 [tender rule stated]; *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 439 [same]; see also *Karlsen v. American Sav. & Loan Assn*. (1971) 15

---

[17]    The written notices required by law (Civ. Code, § 2924 et seq.) at that time were a notice of default and a notice of trustee's sale, the latter of which set the intended sale date.  Any notices of postponement of sale were given orally at the time of the sale date.  (Civ. Code, § 2924g, subds. (a) & (d).)  Effective January 1, 2013, after the relevant time period of this case, the law was amended to require written notice of postponement to the borrower.  (See Civ. Code, § 2924, subd. (a)(5), eff. Jan. 1, 2013 (Stats. 2012, ch. 86, § 10).)

[18]    Among other things, plaintiff generally alleged in his pleading that the notice of trustee's sale was not served and that, after the forbearance period had ended, he did not receive any subsequent written notices relating to the postponement of the trustee's sale date after the HAMP loan modification fell through.  (See fn. 17, *ante*.)

Cal.App.3d 112, 118 [an offer of performance is of no effect if the person making it cannot perform].)

Fourth, to the extent the cause of action was premised on section 2923.5 of the Civil Code, it does not assist plaintiffs because that section does not provide a basis for a postforeclosure sale remedy. Section 2923.5 requires that at least 30 days prior to recording a notice of default, the mortgage servicer must attempt to contact the borrower in person or by telephone "in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." (*Id*., subd. (a)(2).) A notice of default must include a declaration that the servicer has either contacted the borrower or has tried with due diligence to contact the borrower. (*Id*., subd. (b); see *id*., subd. (e) [due diligence described].) As construed by case law, the only remedy for noncompliance with Civil Code section 2923.5 is to allow a borrower to obtain a *postponement* of the foreclosure sale *before* it happens. (*Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 214, 235; *Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 526 (*Stebley*).) Section 2923.5 "does not provide for damages, or for setting aside a foreclosure sale [and] the *sole* remedy available is 'more time' before a foreclosure sale occurs." (*Stebley*, *supra*, at p. 526.) "After the sale, the statute provides no relief." (*Ibid*.)

Not only does Civil Code section 2923.5 not provide a viable legal basis for plaintiffs' postforeclosure cause of action, but we note in passing that the notice of default in this case *did* include a declaration indicating a diligent effort to contact plaintiff was made. Plaintiffs' separate statement did not offer any specific evidence to the contrary. Thus, from every angle, we conclude that defendant met its burden as moving party, the burden shifted to plaintiffs, and plaintiffs failed to demonstrate the existence of a triable issue of material fact. Defendant was entitled to summary adjudication of the second cause of action.

c.    *Third Cause of Action for Slander of Title*

Plaintiffs alleged that posting a postforeclosure three-day notice to quit the premises constituted slander of title.  The elements of a slander of title cause of action consist of (1) the plaintiff's title; (2) the defendant's disparagement of title (a false and unprivileged disparagement or false claim of an interest); and (3) pecuniary damages that specifically resulted from the disparagement of title.  (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 749, p. 169.)  Here, defendant's separate statement presented facts to prima facie substantiate its proper foreclosure of the real property.  Accordingly, the element of a false, disparaging or unprivileged publication was negated, as well as the element of pecuniary damages.  Plaintiffs' opposition failed to produce any evidence creating a triable issue of material fact.  Defendant was entitled to summary adjudication of the third cause of action.

d.    *Fourth Cause of Action for Promissory Estoppel*

Plaintiffs' fourth amended complaint labeled this as a claim for waiver and estoppel, but the parties treat it as an attempt to plead promissory estoppel.  It appears that plaintiff is contending that he stated a cause of action for promissory estoppel based on the HAMP trial plan.  However, defendant's separate statement presented evidence showing that there was no promise that plaintiff would be found eligible for a permanent HAMP loan modification.  Rather, that depended upon income verification.   This was sufficient to carry defendant's burden as moving party.  (See, e.g., *Lange v. TIG Ins. Co.* (1998) 68 Cal.App.4th 1179 1185 [for purposes of promissory estoppel, only a clear and definite promise is actionable]; *Laks v. Coast Fed. Sav. & Loan Assn.* (1976) 60 Cal.App.3d 885, 890-892 [conditional commitment for a loan held insufficient to establish promissory estoppel].)  In opposition to the motion, plaintiffs failed to produce evidence showing a triable issue of material fact on this matter.  Defendant was entitled to summary adjudication of the fourth cause of action.

32.

### e. *Fifth Cause of Action for Injunction*

Injunction is an equitable *remedy* to a person aggrieved by certain torts or other wrongful acts. (5 Witkin, *supra*, Cal. Procedure, Pleading, § 822, p. 238.) Entitlement to injunctive relief requires pleading: (1) the tort or other wrongful act constituting the cause of action and (2) the ground for equitable relief of this kind. (*Id.*, § 823, p. 239.) That is, in order to establish a basis for injunctive relief, a plaintiff must allege (1) the elements of a cause of action involving a wrongful act sought to be enjoined and (2) the grounds for equitable relief. (*San Diego Unified Port Dist. v. Gallagher* (1998) 62 Cal.App.4th 501, 503.) "Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted." (*Shell Oil Co. v. Richter* (1942) 52 Cal.App.2d 164, 168.) Plaintiffs' injunctive relief claim relied upon the prior causes of action in the fourth amended complaint as the underlying wrongs or causes of action to support the remedy of injunctive relief. However, as the discussion above indicates, those causes of action were properly adjudicated in defendant's favor in the motion for summary judgment. Therefore, no cause of action existed upon which to premise the remedy of injunctive relief in this case. Defendant was entitled to summary adjudication of the fifth cause of action.

### f. *Sixth Cause of Action for Negligence*

The same alleged wrongdoing that was alleged in the previous causes of action was set forth in plaintiffs' negligence cause of action, with plaintiffs alleging that defendant's handling of the HAMP loan modification and its subsequent foreclosure of the real property, etc., constituted an unreasonable failure to exercise due care. According to plaintiffs' opening brief on appeal, "Lender took on the duty to handle HAMP and screwed it up." Defendant's motion for summary judgment challenged the cause of action by asserting that, under the undisputed facts, plaintiff did not qualify for a permanent loan modification under HAMP (i.e., even if there was a duty, it was not breached). Defendant further argued that there was no duty of care to automatically

33.

modify plaintiffs' loan, since defendant acted as a conventional lender only; and that when plaintiff failed to qualify for HAMP modification, defendant properly foreclosed.

The elements of a negligence cause of action include the existence of a duty of care owed to the plaintiff, the defendant's breach of that duty, and damages proximately caused thereby. (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 62 (*Lueras*).) Whether a duty of care exists is a question of law to be determined on a case-by-case basis. (*Ibid*.) The general rule is that "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." (*Nymark v. Heart Fed. Savings & Loan Assn*. (1991) 231 Cal.App.3d 1089, 1096.) The offering or consideration of home loan modifications are sufficiently connected to conventional lending transactions as to come within the scope of a bank's conventional role as a mere lender of money. (*Lueras*, *supra*, at p. 67.) In *Lueras*, where the defendant lender/servicer was sued for mishandling or failing to approve a HAMP loan modification (i*d*. at p. 59), the Court of Appeal explained why there was no common law duty of care: "The *Biakanja* [*v. Irving* (1958) 49 Cal.2d 647] factors do not support imposition of a common law duty to offer or approve a loan modification. If the modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, would not be closely connected to the lender's conduct. If the lender did not place the borrower in a position creating a need for a loan modification, then no moral blame would be attached to the lender's conduct." (*Id*. at p. 67.) Accordingly, no common law duty of care was imposed on the lender for purposes of pleading a negligence cause of action. (*Id*. at p. 68.)

On the record before us, we find the analysis and holding in *Lueras* to be applicable here. That is, on the facts presented in connection with defendant's summary judgment motion, no duty of care existed. Moreover, even if a duty of care did exist, no breach of duty was shown by plaintiffs' opposition to defendant's motion for summary

judgment. Therefore, we conclude defendant was entitled to summary adjudication of the Sixth cause of action for negligence.

We note there is a recent appellate decision that concluded, on the particular facts before it, that a duty of care existed in connection with a bank's undertaking of a HAMP loan application. In *Alvarez v. BAC Home Loans Servicing, LP* (2014) 228 Cal.App.4th 941, 945 (*Alvarez*), the trial court had sustained the defendant's demurrer to the plaintiff's negligence claim without leave to amend on the ground there was no duty of care owed. The complaint had alleged that the defendant lender *affirmatively mishandled* the plaintiff's HAMP home loan modification application by detrimentally failing to consider or review the application in a timely fashion (which prevented the plaintiff from seeking other loan modification options), relying on incorrect financial information, losing key documents, making false statements relating to the loan application, and holding itself out to the plaintiff/borrower as processing the HAMP loan application in good faith while simultaneously actively pursuing its foreclosure remedies against the plaintiff's real property (the latter practice was referred to as "dual tracking"). (*Id.* at pp. 945, 951.) The Court of Appeal reversed and held that, under the allegations alleged by the plaintiff in that case, a cause of action for negligence was properly alleged. (*Id.* at pp. 949-951.)

However, the *Alvarez* decision does not assist plaintiffs in the present appeal. Unlike the procedural posture in *Alvarez*, the motion before the trial court here was for summary judgment—which means it was an evidentiary hearing. Even assuming the *Alvarez* court's approach to the negligence and duty of care issues were correct, in this case plaintiffs failed to set forth evidence in opposition to the motion for summary judgment that a triable issue of material fact existed. That is, no evidence was presented or identified in plaintiffs' separate statement to indicate that defendant either stepped beyond the role of a conventional lender or that, in undertaking the HAMP loan application, defendant affirmatively mishandled the application by such acts as using the

wrong financial information and/or committing dual tracking.[19]  For all of these reasons, the trial court did not err in adjudicating the sixth cause of action in defendant's favor.

g.        *Seventh Cause of Action for Breach of Contract*

The essential elements of a cause of action for breach of contract are:  "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff."  (*Reichert v. General Ins. Co*. (1968) 68 Cal.2d 822, 830.)  Plaintiffs' seventh cause of action alleged that the HAMP trial plan documents, together with plaintiff's original note and deed of trust, created a contract by which plaintiffs were entitled to a permanent loan modification. Again, defendant's motion showed that plaintiff was not unconditionally promised that he would automatically receive a permanent HAMP loan modification, but rather it was made clear that receiving a permanent loan modification under HAMP depended on verified income. Therefore when it was ultimately ascertained that plaintiff did not qualify or was found ineligible under federal guidelines to receive a permanent HAMP loan modification, no breach of contract occurred.  Plaintiffs' opposition to the summary judgment motion did not present any evidence to the contrary.  We conclude that no basis for a breach of contract cause of action existed under the undisputed facts and that defendant was entitled to summary adjudication of the seventh cause of action.

h.        *Eighth Cause of Action for violation of TILA*

Plaintiffs' fourth amended complaint alleged that defendants failed to make written disclosures required by the TILA prior to consumption of the transaction.  TILA was enacted by Congress "to assure a meaningful disclosure of credit terms so that the

---

**19**     On the latter point, the evidence was undisputed that once plaintiff made his HAMP application, the foreclosure proceedings were in a forbearance period until such time as it was determined that plaintiff did not qualify for the HAMP loan modification.  Thus, there was no dual tracking here.  (See *Alvarez*, *supra*, 228 Cal.App.4th at pp. 949-950 [dual tracking was prohibited by legislation taking effect in 2013].)

consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." (15 U.S.C. § 1601(a); see implementing regulation at 12 C.F.R § 226.1 et seq. (Reg. Z); *Pacific Shore Funding v. Lozo* (2006) 138 Cal.App.4th 1342, 1349 [summarizing congressional intent].)

Defendant's motion for summary judgment asserted that under the undisputed facts, no basis for liability existed under TILA because plaintiffs rejected the offered IndyMac loan modification and did not qualify for the HAMP loan modification. We agree because, under these unique circumstances, credit was never actually extended by defendant nor was a credit transaction consummated with the consumer. (See, e.g., 15 U.S.C. §§ 1602(f) & 1638(b); 12 C.F.R. § 226.2(a)(12)-(14); *Crawford v. Farmers Group, Inc.* (1984) 160 Cal.App.3d 1164, 1169 ["a consumer credit transaction must exist" before TILA liability applies].) Although a lender is required to make the proper disclosures prior to the extension of credit, generally speaking TILA does not impose liability on the lender until credit is in fact extended. (*Weintraub v. Quicken Loans, Inc.* (4th Cir. 2010) 594 F.3d 270, 274-275.) Accordingly, we agree with defendant that no cause of action under TILA was viable under the undisputed facts. Consequently, defendants were entitled to summary adjudication of the eighth cause of action.

### i.    *Ninth Cause of Action for Fraud*

Plaintiffs' cause of action for fraud was dismissed from the third amended complaint in June 2012 for failure to comply with the trial court's prior ruling. We are not surprised by that outcome, as the allegations in the third amended complaint were utterly lacking in the specificity required of a fraud cause of action, even though plaintiffs had several opportunities to plead adequate facts. Plaintiffs attempted to reassert the previously dismissed fraud cause of action in the fourth amended complaint, but as was the case with the prior pleading, the allegations remained wholly inadequate to state a cause of action for fraud.

The elements of a fraud cause of action are: a representation, usually of fact, which is false, knowledge of its falsity, intent to defraud, justifiable reliance upon the misrepresentation, and damage resulting from that reliance. (*Stansfield v. Starkey* (1990) 220 Cal.App.3d 59, 72-73.) Every element of a fraud cause of action must be alleged with particularity (*id*. at p. 73), including the pleading of facts which "show how, when, where, to whom, and by what means the representations were tendered" (*Hills Trans. Co. v. Southwest Forest Industries, Inc.* (1968) 266 Cal.App.2d 702, 707). "The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." (*Tarmann v. State Farm Mut. Auto. Ins. Co*. (1991) 2 Cal.App.4th 153, 157.)

Here, plaintiffs' cause of action was utterly devoid of the factual specificity required of a fraud cause of action, including with respect to the elements of representation, justifiable reliance and resulting damages. Moreover, as pointed out in defendant's motion, the cause of action was previously dismissed by the trial court and no relief was sought by plaintiffs from that dismissal. Finally, no facts were presented in opposition to the motion for summary judgment to indicate the existence of a triable issue of material fact. For all of these reasons, we conclude that defendant was entitled to summary adjudication of the ninth cause of action.

## VII. Trial Court Did Not Abuse its Discretion in Denying Motion for New Trial

Plaintiffs contend the trial court erred in denying their motion for new trial. We disagree. "[A] trial judge is accorded a wide discretion in ruling on a motion for new trial and … the exercise of this discretion is given great deference on appeal. [Citations.] However, we are also mindful of the rule that on an appeal from the judgment it is our duty to review all rulings and proceedings involving the merits or affecting the judgment as substantially affecting the rights of a party [citation], including an order denying a new trial. In our review of such order *denying* a new trial, as distinguished from an order

*granting* a new trial, we must fulfill our obligation of reviewing the entire record, including the evidence, so as to make an independent determination as to whether the error was prejudicial." (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 871-872; accord, *Sherman v. Kinetic Concepts, Inc*. (1998) 67 Cal.App.4th 1152, 1160-1161.)

Here, plaintiffs' motion for new trial outlined the various legal grounds for a motion for new trial pursuant to section 657 and made general and perfunctory allegations of error without factual support. The trial court denied the motion, explaining: "Upon a thorough review of the moving, opposing and reply papers, the Court fails to discern any basis for granting the Plaintiffs the relief sought." Having considered the entire record, we agree with the trial court's assessment. No abuse of discretion has been shown with regard to the trial court's denial of plaintiffs' motion for new trial. For the same reasons, plaintiffs' motion to vacate the judgment and enter a new judgment under section 663 was, likewise, properly denied.

## DISPOSITION

The judgment and orders of the trial court are affirmed. Costs on appeal are awarded to defendant.

_____

Kane, Acting P.J.

WE CONCUR:


_____

Poochigian, J.


_____

Franson, J.